### PAINTER INJURED BY THE BREAKING OF A LADDER.

Court of Appeals for Cuyahoga County.

GEORGE L. WESTROPP v. WILLIAM F. SCHUCK.

Decided, January 25, 1915.

*Negligence—Employer Not Liable to Employee for Injury—Where the Employee Deliberately Elects "to Take the Chance"—Proximate Cause—Admissibility in Evidence of a Conversation by Telephone.*

Two painters, who had protested that one of the ladders furnished them was unsafe, received a telephone message from their employer in which he said he could not afford to buy new ladders, and telling them, according to one witness, to "come in," and according to another witness to "go ahead and do the best you can." Fearing that if they heeded a call to "come in" they would either be laid off or given less desirable work, they agreed between themselves that they would stay and "take a chance." The ladder broke and one of the men fell and was injured. *Held:*

That the going to work, under the circumstances presented, constituted the original act of negligence and was the proximate cause of the injury.

*Patterson & Neiding,* for plaintiff in error.
*Spear, Mills, Knight & Godfrey,* contra.

GRANT, J.

Error to the court of common pleas.

For the purposes of clearness and brevity, the parties to this proceeding will be designated here as they were in the court below, that being in the inverse order of their present standing.

It is not disputed that at the time the plaintiff came to his injuries the defendant employed, regularly, more than five men

and that he was not a contributor to the state liability insurance fund; so that, the plaintiff being in his service as a workman, the former allowable defenses of assumption of risk by the plaintiff, the contributory negligence of the plaintiff and the culpable acts or omissions of a fellow-servant in the same employment, if any of these was the fact, were not open to him.

The negligence alleged in the petition upon which the cause was tried below, and from which a liability was sought to be fastened upon the defendant, consisted, as was said, proximately to the injury, in providing appliances which, within the actual or putative knowledge of the latter were defective, unsafe and dangerous to be used in the service which the plaintiff was set to do by the master. Specifically, it was charged that within such knowledge the ladders upon which the plaintiff was ordered to work at the time, were not of equal size and were of insufficient strength.

It appears that the plaintiff was engaged, under the direction of the defendant's foreman, in painting a house. Two ladders were provided which were set parallel to each other against the house. They were of unequal lengths, one being thirty-five feet and the other forty feet long. The mode of working was to suspend a scaffold or staging, consisting of a plank upon which the plaintiff was to stand, from the two ladders by means of hooks swung over the top rung of each. This method produced, it is said, an unequal strain upon the rungs of the ladders, giving a tortious or rotary bearing at the points of contact of the hooks with the rungs.

The top rung of the shorter ladder was defective as to strength, so it is said, being in fact rotten, and it broke when the unequal strain was brought to bear upon it, precipitating the plaintiff from his place on the plank and so causing his hurts.

It appears that the plaintiff, before mounting the ladder, had misgivings as to the strength of the one that finally broke, and so stated to his fellow-workman, one Goldsmith. They then consulted their foreman, who directed them to call up Mr. Westropp, the defendant, at his shop, by telephone. Goldsmith did this, calling his attention to the feared infirmity in the ladder

and asking his direction in the matter. His purported answer was reported by Goldsmith to the plaintiff. As to this answer, two versions are given—one by Goldsmith to the effect that Westropp said when notified of the condition of the ladder, "Well, you boys come in."

The reason they did not "come in," as narrated by Goldsmith, was—in the language he then used to the plaintiff—"That means either an inside job or a lay-off." To which the plaintiff responded, according to Goldsmith, that it was pretty warm and so he did not care for inside work. Goldsmith replied to this by saying, "Suppose we take a chance on them ladders." And the plaintiff said, so Goldsmith says, "All right."

And they went to work, with the result mentioned.

The plaintiff does not deny this proposition by Goldsmith that they should "take a chance" on the ladder in its then known or suspected defective condition. His testimony in this respect is as follows:

"Q. Didn't Goldsmith then say, suppose we take a chance on them ladders and you both went up the ladder? You remember Goldsmith saying that? A. I don't remember.

"Q. Will you say he didn't say it? A. I couldn't say whether he did or not. Something I don't know, I won't dispute."

That the infirm or defective condition was known, or at least suspected by the plaintiff at the time, seems clear from what he says:

"Q. As a matter of fact you knew when you went up that ladder then that the ladder was liable to break if you went up on top of it, is that so? A. Well, at least I thought so.

"Q. So when you went up on that platform on the plank between those two ladders you knew it was liable to break and have an injury? A. Not as long as I see Gorman up there.

"Q. You thought so, didn't you? A. I thought so, yes."

The plaintiff's account of what Goldsmith reported to him as coming from Westropp when the latter was called up for instructions by telephone, was this:

"Gorman came out and told me in the presence of the fore-
man that Mr. Westropp says that it is the best he can do. He
can't afford to get any new ladders, 'So do the best you can
with what you have got.'"

.It should be said here that Goldsmith appears to have gone,
indifferently, by the name of Goldsmith and the name of Gor-
man—it evidently being a case of *idem sonans* to the Teutonic
apprehension.

It is not quite clear, we think, whether the words "So do the
best you can with what you have got," are intended as the lan-
guage of Westropp or the advice of Goldsmith, *alias* Gorman.
But we infer the former.

In the plaintiff's brief before us, the following appears:

"Plaintiff testified that when Goldsmith, at the foreman's
request, phoned to Westropp, Goldsmith reported that West-
ropp said he could not afford to get other ladders and that they
would have to use the ones they had, and that thereupon the
foreman directed plaintiff and Goldsmith to proceed with the
work."

This does manifest violence to the language that the plaintiff
did use and which we have quoted from the record. Allowing
it to be true, it would amount to a direction to the plaintiff to
use the ladders he had, and would come fairly within the rule
in *Coal & Car Co.* v. *Norman*, 49 O. S., 598, a promise to repair
being implied from the language of the employer. At least
the question of whether there was not an implication of such
promise would be for the jury.

But what the plaintiff in fact testified in this respect falls
far short of that. *He was told to do the best he could with the
appliances at hand.* Surely it was not doing the best he could
to mount to work on a ladder having a rotten rung, and he know-
ing it. We have, then, these things in the record: the plaintiff's
own statement to the effect that his employer told him to do
the best he could with the ladders he had, and not a direction
to use a ladder known or thought by him to be unsafe. His
own statement is that he thought the ladder was liable to break

and the testimony of his co-laborer—uncontradicted by him—
is to the effect that he consented to the proposition of the latter
to "take a chance" with the defective ladder, rather than to
take a chance of losing his job or being put to work inside in
hot weather.

His going to work under these circumstances was an original
act of negligence, apart from and independent of anything that
the master set him to do, and constituted the proximate cause
of the injuries of which he complains. The record does not,
in our opinion, present the question of assumed risk. That doc-
trine has to do with work at which the servant has been set by
the master, and not with a method of work at which he has set
himself upon his own initiative, the only direction of the em-
ployer being to do the best he could—presumably, as far as the
master's words go, the best for himself and for his own personal
safety, and which by no reasonable intendment could be made
to mean an instruction to expose himself to the perils of using
an instrumentality thought by himself to be dangerous. If
there was a risk he took it, not as an incident of a direction to
work, but as one appertaining to a course of action which he
saw fit to substitute in place of the course advised by his em-
ployer. It would be a novel proposition for a servant to disre-
gard his master's instructions and then hold the master respon-
sible for whatever the former might see fit to do in place of them.
And when it is not denied that the servant, instead of doing
what he was advised to do by the master, consented to "take a
chance" upon the very implement of the defective condition of
which he was at the time complaining, then he put himself in
the wrong, clearly so, as we must think, and should take the
consequences flowing from that fact.

There is other testimony in the record, especially that of the
foreman, Donalek, which strengthens the conclusion we have so
far reached, but we can with safety rest on what the plaintiff
says and on that which he does not dispute.

If this conclusion is sound, then the case should have been
taken from the jury at the close of the plaintiff's evidence, as
was asked, or, certainly, at the conclusion of all the evidence, as

was again requested. For the same reason the motion of the defendant for a new trial should have been allowed instead of denied, as the fact was.

The admission of testimony as to the talk had with Westropp over the telephone, was not an error, as we view it. At most, it was not to the prejudice of the party who complains of it.

The answers of the jury to several of the interrogatories propounded to them on the trial show clearly, in our estimation, that they did not consider the evidence in the case. In endeavoring to sustain the answers necessary, as they thought, to uphold the verdict, their attempted explanations proved that they had disregarded and paid no attention to evidence without which the conclusion they reached could not find support. And this is an additional reason why the motion for a new trial should have prevailed.

Because of the errors found, the judgment complained of in this petition is reversed and the cause is remanded to the court of common pleas for such further proceedings there as may be in accordance with law.

WINCH, J., and MEALS, J., concur.